UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
CHRISTIE WILLIAMS,

                        Plaintiff,

      - against -

PREEMINENT PROTECTIVE SERVICES,
INC. and LURLINE BELL,

                       Defendants.
-------------------------------------------------------x

**MEMORANDUM & ORDER**

14-CV-5333 (ILG) (MDG)

GLASSER, Senior United States District Judge:

      Plaintiff Christie Williams brings this action against Preeminent Protective Services, Inc. ("Preeminent") and its CEO, Lurline Bell (together, "defendants"), alleging that they violated the unpaid-wage and retaliation provisions of the New York Labor Law and were unjustly enriched when Preeminent fired her six days after she wrote to Bell seeking clarification regarding commissions she was to be paid for bringing in business to the company. Defendants now move to dismiss the Complaint for lack of personal jurisdiction and/or improper venue pursuant to Federal Rules of Civil Procedure 12(b)(2) and (3). For the following reasons, their motion is DENIED.

## BACKGROUND

      At all times relevant to this litigation, plaintiff lived in Brooklyn, New York. Compl. (Dkt. No. 1) ¶ 6. Preeminent, which provides "physical security" services in Maryland, Virginia, the District of Columbia, and Nevada, is a Maryland corporation with its principal place of business in Washington, D.C. Id. ¶ 7; Bell Aff. (Dkt. No. 5-2) ¶¶ 2, 4. Bell lives in Charles County, Maryland and regularly commutes to Preeminent's Washington, D.C. office for work. Bell Aff. ¶ 3.

1

In May of 2013, while plaintiff was visiting Maryland, Bell orally agreed to let plaintiff work for Preeminent as a "marketing assistance" provider, although the parties differ strenuously over the precise scope of plaintiff's responsibilities and whether she was "employed" to perform them or merely engaged as an independent contractor. See Williams Decl. (Dkt. No. 8-1) ¶ 8; Pl.'s Mem. (Dkt. No. 8) at 10; Bell. Aff. ¶¶ 13-15. According to plaintiff, in June of 2013, once she had returned to Brooklyn, Bell "expanded [plaintiff's] responsibilities to include all of Preeminent's communications and marketing needs." Williams Decl. ¶¶ 9-10. Because Preeminent was experiencing "cash flow problems" and could not properly compensate plaintiff for the value of her services, she claims, defendants offered to further expand her responsibilities to include business development, and would pay her commissions of between 0.3 and 0.5% on each new contract plaintiff procured, in addition to a small bi-weekly salary. Id. ¶¶ 9-11. Defendants deny the existence of this supplemental agreement, but both sides agree that some agreement between the parties existed that was never reduced to writing. See id. ¶ 12; Defs.' Reply (Dkt. No. 9) at 7.

Although defendants believe plaintiff to have worked remotely in many different locations, plaintiff states that "[v]irtually all" of her work for Preeminent was carried out from her home in Brooklyn, except on "rare occasions" when she was required to travel to complete tasks. Bell Aff. ¶ 19; Williams Decl. ¶ 7. Plaintiff's arrangement was similar to other Preeminent employees who worked from home, including the company's Chief of Operations and Chief Financial Officer. Williams Decl. ¶ 3. Plaintiff was expected to be available to defendants at all times, and was provided with a company-owned laptop, cellphone, and internet hotspot for that purpose. Id. ¶ 5. Plaintiff's duties included coordinating communications between Preeminent's central office and hundreds of its

field employees via a text-messaging system she implemented and operated from her home.  Id. ¶ 14 & Ex. 3.

On January 16, 2014, plaintiff sent Bell an email from her home in New York, following up on a previous inquiry as to what her commission would be on a contract she procured for Preeminent with the National Oceanic and Atmospheric Administration ("NOAA") Federal Credit Union.  Id. ¶ 15; Compl. ¶ 37.  Six days later, on January 22, 2014, Bell sent plaintiff an email informing her that Preeminent had "made a decision not to continue with you[r] services[,] effective today."  Williams Decl., Ex. 2.  Although her final paycheck included a commission for the NOAA contract, no commissions were paid on other contracts plaintiff had finalized or was in the process of finalizing.  Compl. ¶¶ 38-40, 45-47.[1]

Plaintiff filed this suit on September 12, 2014, invoking this Court's diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(1).  See Compl ¶ 4.  Defendants filed this motion on November 12, 2014.  Dkt. No. 5.  Plaintiff filed her opposition on December 3, 2014 (Dkt. No. 8) and defendants replied on December 17, 2014 (Dkt. No. 9).

## LEGAL STANDARD

Motions to dismiss for improper venue and lack of personal jurisdiction are evaluated using the same legal standard.  Gulf Ins. Co. v. Glasbrenner, 417 F.3d 353, 355 (2d Cir. 2005).  In either case, plaintiffs bear the burden of demonstrating that venue and jurisdiction are proper.  See id. (citing CutCo Indus., Inc. v. Naughton, 806 F.2d 361, 364-65 (2d Cir. 1986)).  Where, as here, the Court relies solely on the submissions of the parties in ruling on the motion, plaintiffs satisfy that burden by pleading facts

---

[1] Although the parties make much of plaintiff's subsequent decision to file for unemployment benefits in the District of Columbia, it is not relevant for the purposes of deciding this motion.  At the heart of plaintiff's claims are the commissions defendants allegedly owe her, which were not awarded as part of her unemployment benefits.

3

sufficient to demonstrate a prima facie showing of jurisdiction or venue by way of the complaint's allegations, affidavits, and other supporting evidence, which are evaluated in the light most favorable to them.  See CutCo, 806 F.2d at 364-65.

**DISCUSSION**

### I. Personal Jurisdiction

"With exceptions not relevant here, a district court sitting in a diversity action such as this may exercise personal jurisdiction to the same extent as the courts of general jurisdiction of the state in which it sits." Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 305 F.3d 120, 124 (2d Cir. 2002) (Sotomayor, Cir. J.) (citing Fed. R. Civ. P. 4(k)(1)(A)).  Courts must also ensure, however, that "a state's assertion of jurisdiction [does not] contravene[] a constitutional guarantee." Arrowsmith v. United Press Int'l, 320 F.2d 219, 223 (2d Cir. 1963) (en banc).  Thus, this Court must conduct a two-pronged inquiry, determining both whether New York would allow its courts to exercise personal jurisdiction over defendants and whether exercising that jurisdiction would be permissible under the Due Process Clause of the Fourteenth Amendment. Bank Brussels, 305 F.3d at 124.  Plaintiff claims that this Court has both general and specific personal jurisdiction over defendants here, and the Court addresses each argument in turn.

### A. General Jurisdiction

"A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. ---, 131 S. Ct. 2846, 2851 (2011) (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 317

4

(1945)). In New York, N.Y. C.P.L.R. § 301 allows courts to invoke that jurisdiction where corporations have engaged in "such a continuous and systematic course of 'doing business' [in the state] that a finding of [their] 'presence' [there] is warranted." See Landoil Res. Corp. v. Alexander & Alexander Servs., Inc., 77 N.Y.2d 28, 33 (1990).[2]

The Supreme Court, however, recently clarified that even "engag[ing] in a substantial, continuous, and systematic course of business" in a foreign state does not mean that such business is so continuous and systematic as to render an entity "at home" in the state where it was conducted. Daimler AG v. Bauman, 571 U.S. ---, 134 S. Ct. 746, 761 (2014) (internal quotation marks and citation omitted). Rather, general jurisdiction extends beyond an entity's state of incorporation and principal place of business only in "exceptional" cases, and exerting it over foreign corporations merely because they or their subsidiaries conduct regular business in a state may violate the Due Process Clause. See Sonera Holding B.V. v. Çukurova Holding A.Ş., 750 F.3d 221, 222 (2d Cir. 2014) (per curiam) (citing Daimler), cert. denied, 573 U.S. ---, 134 S. Ct. 2888 (2014).

Here, the Court need not address the "tension" that exists between the Supreme Court's narrowing of the term "at home" and New York's "doing business" test because regardless of whether plaintiff can establish general jurisdiction under New York law, exerting it over defendants would clearly violate the due process principles codified in Daimler. See id. at 224 n.2. Plaintiff does not identify anyone in New York who worked for Preeminent besides herself, and points to only one client in the state, who defendants allege hired Preeminent solely to work at an event they held in Washington,

---

[2] Although the Supreme Court's recent decisions concerning general jurisdiction have focused on corporate entities, the same analysis obviously applies to individuals transacting business in a forum state. See Reich v. Lopez, --- F. Supp. 3d ---, No. 13 Civ. 5307, 2014 WL 4067179, at *11-14 (S.D.N.Y. Aug. 18, 2014) (citing, inter alia, Patel v. Patel, 497 F. Supp. 2d 419, 425 (E.D.N.Y. 2007)).

5

D.C.  See Williams Decl. ¶ 17; Bell 2d Decl. (Dkt. No. 9-1) ¶¶ 3-5.  These are not "exceptional" contacts with New York of the kind that render Preeminent or Bell "at home" here, and this Court therefore lacks general jurisdiction over defendants.

### B. Specific Jurisdiction

"Specific jurisdiction exists when 'a State exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum.'" Chloé v. Queen Bee of Beverly Hills, LLC, 616 F.3d 158, 164 (2d Cir. 2010) (quoting Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 & n.8 (1984)).  As with general jurisdiction, the law of the forum state must permit specific jurisdiction over the defendants, and the exercise of that jurisdiction must comport with the requirements of the Due Process Clause.  See id.

#### 1. New York Law

Plaintiff invokes N.Y. C.P.L.R. § 302(a)(1) as grounds for specific jurisdiction here.  That portion of New York's "long-arm" statute allows its courts to exercise jurisdiction over non-domiciliaries who transact any business within the state, provided that the transactions are purposeful and that there is a substantial relationship between the transactions and the claims being asserted against the non-domiciliaries.  See Kreutter v. McFadden Oil Corp., 71 N.Y.2d 460, 467 (1988).

##### a. Transacting Business

"[P]roof of one transaction in New York is sufficient to invoke jurisdiction [pursuant to Section 302(a)(1)], even though [a] defendant never enters New York," as long as the purposefulness and substantial relationship tests are also satisfied.  See id.  "Although it is impossible to precisely fix those acts that constitute a transaction of business, [New York] precedents establish that it is the quality of the defendants' New

6

York contacts that is the primary consideration." Fischbarg v. Doucet, 9 N.Y.3d 375, 380 (2007) (citations omitted).

Here, plaintiff has made a prima facie showing that defendants had a significant continuing relationship with her over the months she worked for them. See id. at 381. Defendants sent her all the materials she needed to do her job and expected her to be on call for them at all hours. See Williams Decl. ¶¶ 2-5. She was required to participate in a weekly conference call from home, during which she reported directly to Bell. See id. ¶ 3. The emails she submits reveal a large amount of substantive work she undertook for the company while in Brooklyn. See id., Ex. 3. Most importantly, she was responsible for securing new business for defendants, which they acknowledged, at least in part, by paying her one commission. See Compl. ¶¶ 35-37, 45.

Defendants, citing only to out-of-state cases, argue that "[a]n employee's decision to work from home in the forum state does not bind an entity to personal jurisdiction in that state." See Reply at 2. Plaintiff's decision to work from home, however, was not unilateral. Defendants hired her knowing that she would live and work in Brooklyn, and "continued their communications with plaintiff here" for a sustained period of time, thereby engaging in the kind of "'independent activities'" in the state that render long-arm jurisdiction appropriate. See Fischbarg, 9 N.Y.3d at 382-83 (quoting Haar v. Armendaris Corp., 337 N.Y.S.2d 285, 288 (App. Div. 1972) (Capozzoli, J., dissenting) (emphasis removed), adopted as majority on appeal by 31 N.Y.2d 1040 (1973)). At this stage, plaintiff has sufficiently demonstrated that defendants transacted business in New York.

### b. Purposefulness

A transaction is "purposeful" when the defendant "avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Fischbarg, 9 N.Y.3d at 380 (internal quotation marks and citations omitted). While defendants may not have sought a unique benefit when they transacted business in New York, they nevertheless "availed" themselves of the forum when they hired plaintiff to conduct their marketing and communications while she lived in Brooklyn, which satisfies the requirements of the state's long-arm statute. See id. at 382-84 (finding specific jurisdiction over California defendant whom a New York lawyer sued for non-payment of services rendered in a matter the lawyer litigated for the defendant in Oregon).

### c. Substantial Relationship

It is clear from the face of the Complaint that there is a "substantial relationship" between the work plaintiff alleges she undertook for defendants and her claims in this suit, which arise out of her termination by defendants. Thus, plaintiff has satisfied all three requirements necessary to invoke N.Y. C.P.L.R. § 302(a)(1).

### d. Bell's Fiduciary Shield Doctrine Defense

Defendants claim Bell cannot be subject to personal jurisdiction because, although she agreed to hire plaintiff, she did so only "in her capacity as an agent or officer of Preeminent." See Reply at 2. In other words, Bell invokes the "fiduciary shield doctrine," a general principle that "an individual should not be subject to jurisdiction if [her] dealings in the forum State were solely in a corporate capacity." Kreutter, 71 N.Y.2d at 467. New York, however, does not recognize the fiduciary shield doctrine, believing that it "unfairly prejudic[es] plaintiffs who seek relief against defendants

8

conducting affairs in this State." Id. at 471; see also Retail Software Servs., Inc. v. Lashlee, 854 F.2d 18, 23 (2d Cir. 1988). While Bell's assertion that she has no involvement in this dispute beyond her corporate role may be a valid defense on the merits, it does not divest the Court of jurisdiction. "Liability may be considered only after it is decided . . . that the defendant is subject to the in personam jurisdiction of our courts." Kreutter, 71 N.Y.2d at 470.

### 2. The Due Process Clause

An analysis of whether the exercise of a State's long-arm statute offends the Due Process Clause has two related components: an inquiry into whether the defendants have the "minimum contacts" with the forum state necessary to invoke such jurisdiction, and a broader "reasonableness" test. See Chloé, 616 F.3d at 164. The minimum contacts portion of the analysis is satisfied here for the same reasons that New York's long-arm statute is applicable: defendants have purposely availed themselves of a New York resident's services by hiring plaintiff, and "parties who 'reach out beyond one state and create continuing relationships and obligations with citizens of another state' are subject to regulation and sanctions in the other State for the consequences of their activities." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472-73 (1985) (quoting Travelers Health Ass'n v. Virginia, 339 U.S. 643, 647 (1950)).

As for reasonableness, a plaintiff seeking to invoke a state's specific jurisdiction "must still demonstrate that [it] does not 'offend traditional notions of fair play and substantial justice'" to do so. Chloé, 616 F.3d at 173 (quoting, inter alia, Asahi Metal Indus. Co. v. Superior Court of Cal., 480 U.S. 102, 113 (1987)). In determining whether those notions are satisfied, courts analyze (1) the burden on the defendants, (2) the interests of the forum state, (3) the plaintiff's interest in obtaining relief, (4) the

interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the states in furthering fundamental substantive social policies. See Asahi, 480 U.S. at 113.

As to the first factor, while there certainly will be a burden on defendants if they are required to travel for trial, that inconvenience "cuts both ways" because plaintiff, a single mother, would be required to travel to Maryland or the District of Columbia were this case to be dismissed with leave to re-file in one of those forums. See Chloé, 616 F.3d at 173 (citing Bank Brussels, 305 F.3d at 129-30). The second factor favors New York since a state "frequently has a 'manifest interest in providing effective means of redress for its residents.'" Id. (quoting Burger King, 471 U.S. at 483). The third factor favors New York, as plaintiff resides here. The remaining two factors are neutral. The Court therefore concludes that the traditional notions of fair play and substantial justice are not offended by exercising jurisdiction here, and defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2) is denied.

## II. Venue

Venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b)(2). Courts making venue determinations in contract disputes, where claims are often similar to those alleged here, focus on where the contract was negotiated or executed, where it was to be performed, and where the alleged breach occurred. See Glasbrenner, 417 F.3d at 357 (quoting Matera v. Native Eyewear, Inc., 355 F. Supp. 2d 680, 686 (E.D.N.Y. 2005)). Plaintiff has made a prima facie showing that she entered into the purported commission agreement on which she bases her three claims for relief while she was in Brooklyn, that she performed "virtually all of [her] work" for defendants in Brooklyn,

and that she was terminated as a result of an email she sent while in Brooklyn.  See Williams Decl. ¶¶ 7, 9-10, 15.  She has therefore established that this District is a proper venue for this action to the extent necessary to defeat defendants' motion to dismiss.

## III. Transfer

In a cursory paragraph at the end of their initial memorandum of law, defendants ask that this case be transferred to the district court for either Maryland or the District of Columbia "if the Court [is] not inclined to dismiss [p]laintiff's claims."  See Defs.' Mem. at 12.  The Court will not entertain that request, as it is not contained in defendants' notice of motion and is unsupported by any citation to authority.  See Benship Int'l, Inc. v. Phosphate Chems. Exp. Ass'n, Inc., 771 F. Supp. 87, 89 n.4 (S.D.N.Y. 1991).

## CONCLUSION

For the foregoing reasons, defendants' motion to dismiss is DENIED in its entirety.

SO ORDERED.

Dated: Brooklyn, New York
January 29, 2015

/s/
I. Leo Glasser
Senior United States District Judge

11