UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
CHRISTIE WILLIAMS

      Plaintiff,        MEMORANDUM AND ORDER
                        14-CV-5333
 - against –


PREEMINENT PROTECTIVE SERVICES, INC.
and LURLINE BELL,

      Defendants.
-------------------------------------------------------x
GLASSER, Senior United States District Judge:

  Plaintiff Christie Williams ("Williams" or "Plaintiff") brings claims against Defendants Preeminent Protective Services, Inc. ("Preeminent") and Lurline Bell, Preeminent's chief executive officer ("Bell," together the "Defendants"), for unpaid wages and retaliation under New York Labor Law (N.Y.L.L.) §§ 190 and 215,[1] respectively, and for unjust enrichment. Jurisdiction is proper under 28 U.S.C. § 1332. This Court denied Defendants' motion to dismiss for lack of personal jurisdiction and/or improper venue in <u>Williams v. Preeminent Protective Servs., Inc.</u>, 81 F. Supp. 3d 265 (E.D.N.Y. 2015), familiarity with which is assumed. Defendants now move for summary judgment.

## BACKGROUND

  The following material facts, drawn from the parties' Local Civil Rule 56.1 Statements and evidentiary submissions, are undisputed unless otherwise noted.

---

[1] The Complaint does not reference the specific sections of the N.Y.L.L. that Plaintiff claims were violated. <u>See</u> <u>generally</u> ECF 1, Complaint ("Complt."). However, Plaintiff clarifies in her motion papers that her retaliation claim is brought pursuant to N.Y.L.L. § 215. ECF 39, Opp., at p. 20. While she does not cite to a provision of the N.Y.L.L. in support of her unpaid wage claim, Plaintiff does not contest Defendants' reference to N.Y.L.L. § 191, and frames her arguments as a violation of that section.

1

Overview of Preeminent and Hiring of Williams

Defendant Preeminent provides "physical security services" in the Washington D.C. metropolitan area and the state of Nevada, primarily to federal and local government entities. ECF 38, Defendants' Local Rule 56.1 Statement of Undisputed Facts ("Def. Rule 56.1 St.") at ¶ 1. When bidding on a contract, Preeminent submits proposals to government agencies that are seeking a contractor for security services, and the agency awards the contract based on the most favorable bid. Id. at ¶¶ 2-3.

In May 2013, Williams began working for Preeminent. Id. at ¶ 10; ECF 39-3, Plaintiff's Local Rule 56.1 Counterstatement ("Pl. Rule 56.1 St.") at ¶ 8. Williams and Bell had met in 2001 and were personal friends for a number of years. Def. Rule 56.1 St. at ¶ 7. Williams worked primarily from her home in Brooklyn, New York (id. at ¶ 12; Pl. Rule 56.1 St. at ¶ 5), and Preeminent provided Williams with a company laptop, cell phone and email address to perform her duties. Def. Rule 56.1 St. at ¶ 13.

Williams' Role at Preeminent

Williams was responsible for Preeminent's communications and marketing needs, which included creating a text message and email alert system to communicate with Preeminent employees, designing brochures and catalogues, and updating the Preeminent website. Id. at ¶ 14; Pl. Rule 56.1 St. at ¶¶ 8, 14. The parties dispute the extent to which Williams was also engaged in business development. The record includes emails indicating that Williams' title was "Corporate Communications and Business Development Manager" (ECF 38-6, 38-10, 39-1 at Ex. C), and that, at minimum, she was involved with coordinating the contract proposal process, reaching out to and scheduling meetings with potential business contacts (ECF 38-6, 39-1 at Ex. C), and was a member of Preeminent's "Business Development and Contract Management"

2

team, engaged in "proposal writing." ECF 38-12; see also ECF 39-2 at Ex. 1, 39-1 at Ex. B. Williams says that Bell trained her to draft proposals, and that Preeminent paid for Williams to attend business development training. Pl. Rule 56.1 St at ¶¶ 15, 55.

Williams' Compensation

Preeminent compensated Williams $1,000 bi-weekly. Id. at ¶¶ 8, 14. According to Williams, this salary was low in light of her responsibilities. ECF 39-2, Declaration of Christie Williams ("Williams Aff."), at ¶ 9. To make up the difference, she says that Bell agreed to pay her a commission on the contracts she was involved in procuring. Id. The agreement was never committed to writing, but Williams testified that she and Bell verbally agreed that Preeminent:

> was going to provide a lump sum commission on the first few large contracts and that subsequent commission checks would be distributed annually to supplement my annual salary . . . and that that commission would be between .3 and .5 percent.

ECF 39-4, Ex. A, Deposition of Christie Williams ("Williams Dep.") at 226:2-9; see also id. 286:7-12; Pl. Rule 56.1 St at ¶ 8. Williams testified that she and Bell discussed this arrangement during a number of conversations, beginning in June 2013, but she could not identify a specific date on which the agreement was finalized. Williams Dep. at 228:2-5; 237:18-240:13. Williams testified that "[i]f any contract that I was involved in brought in revenue for the company, I was going to be compensated for it." Id. at 272:19-273:3.

Conversely, Bell swears that she never offered to pay any commission to Williams, and that Preeminent does not pay commissions on contracts. ECF 38-3, Affidavit of Lurline Bell ("Bell Aff.") at ¶¶ 23, 26.

The USDA Proposal

In June 2013, Preeminent bid on a contract with the United States Department of Agriculture ("USDA") by submitting a joint proposal with a subcontracting company, called

3

SecTek. Def. Rule 56.1 St. at ¶ 18; Williams Dep. at 163:10-16. The evidence indicates that the final proposal was submitted to the USDA sometime between January 8 and January 13, 2014.[2]

The parties dispute the role Williams played in generating the USDA proposal. Williams claims that she researched the "decision makers" at USDA and SecTek, that she proactively reached out to SecTek to make an initial contact, and then worked with SecTek to generate the final proposal. Pl. Rule 56.1 St at ¶ 19; ECF 39-1 at Ex. C. The record includes email correspondence corroborating her claims. ECF 38-6; 39-1 at Ex. C. Conversely, Defendants say that Williams was not substantively involved with the USDA proposal; instead, she only performed administrative tasks, such as emailing the final proposal to the government agency. Def. Rule 56.1 St. at ¶ 20.

<u>Williams' Termination</u>

Bell claims that by December 2013, Williams had been missing deadlines and completing projects late, and that she was preoccupied by other obligations, including caring for her infant daughter and searching for other employment. Id. at ¶¶ 26-28. Bell says she considered terminating Williams at that time, but Williams agreed to improve her performance. Id. at ¶ 28. There is no evidence in the record of Williams' poor performance other than the statements in Bell's affidavit. Bell Aff at ¶ 24.

---

[2] Williams testified that the proposal was due in January. Williams Dep. 182:13-15 ("Q: Do you know when the proposal was due for the USDA effort or RFP? A: I believe it was in January."). On January 8, 2014, Williams emailed a SecTeck employee asking, "Do you know when you will be finished with the final draft of the proposal? I would like to get this out the door as soon as possible," to which he responded, "Working on it now. Reviewing later this morning so early afternoon." ECF 38-6. A few days later, on January 13, 2014, Williams sent another email to the employee, stating, "now that we have the USDA Beltsville Proposal out the door…" ECF 39-1 at Ex. C.

4

On January 16, 2014, Williams sent Bell an email which read, in relevant part:

> When I first started we verbally discussed the compensation for the contracts that I brought into Preeminent would be a car for the first major contract and then a certain percentage on the contracts to follow.
>
> The first contract that I closed with NOAA Federal Credit Union was $250K for one base year and 4 optional years. You mentioned a few weeks back that you would pull a report and let me know what the compensation would be on that awarded contract. Were you able to do that yet?
>
> Currently, there are three pending contracts and I thought it would be best to get the percent of compensation hammered out before the results come in.
>
> Pending Contracts:
>
> - USDA Beltsville contract with a $16.4 M potential for one base year and 4 option years
> - DHS sole source contract with an unknown contract amount because I'm waiting to hear back from the contracting officer[3]
> - Navy contract acting as subcontractor for the Virginia location(s) and an upcoming partnership for a major Pentagon contract[4]
>
> This way everything is clear moving forward.

ECF 38-13, p. 1 (the "Jan. 16 Email"). Two days later, on January 18, 2014, Bell sent Williams an email which read "I will prepare something for review by [close of business] next week." ECF 38-13, p. 2. Williams claims that Bell was responding to the Jan. 16 Email, and affirming that she would clarify the commission owed to Williams. ECF 39, Opp., at p. 21. However, Defendants note that Bell's email displays a different subject line than the Jan. 16 Email, and claim that Bell was referring to something unrelated to the Jan 16 Email. ECF 43, Reply, at p. 9.

---

[3] The DHS sole source was a contract opportunity that Williams claims she found. Williams testified that she communicated with an individual at the Department of Homeland Security ("DHS") to submit a proposal on Preeminent's behalf. She testified that after she was terminated from Preeminent, she learned from DHS that the contract had been awarded to Preeminent, but that Preeminent never followed through and the contact was never finalized. Williams Dep. at 292:7-22.

[4] The record contains an email dated January 14, 2014 from Williams to Bell in which Williams explains that she contacted the company that "won the Navy contract," and was attempting to schedule a meeting to discuss subcontracting opportunities. ECF 39-1, p. 27.

Nevertheless, on January 22, 2014, Bell sent Williams an email in which she terminated Williams' employment, effective immediately. ECF 38-8. Preeminent sent Williams a final paycheck which totaled $1,950. ECF 38-11.

Subsequent Events

On January 30, 2014, Williams sent an email to Bell which read, in part:

> Furthermore, promised commission needs to be calculated for the following pending contracts:
>
> - USDA Beltsville contract with a $16.4 M potential for one base year and four option years
> - DHS sole source contract
> - Any subcontract agreement with HBC Management on the Navy contract . . .
>
> . . . If you would, please put in writing my commission for the pending contracts.

ECF 39-1 at Ex. F (the "Jan. 30 Email").

Following her termination, Williams contacted an individual at the USDA to follow up regarding the USDA contract award. Williams Dep. at 200:15-201:5 (Q: So, this third occasion where she said that they had awarded the contract, you were no longer working with Preeminent? A: That is correct.). The individual told her that the USDA had awarded the contract to Preeminent but still "had to hammer out the price." Williams Dep. at 200:16-20. Williams claims that the USDA contract was worth a potential $16.4 million for one base year and four option years. Complt. at ¶ 38; Pl. Rule 56.1 St. at ¶ 60. Neither the USDA contract nor other supporting documents regarding the USDA contract are before the Court.

**DISCUSSION**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. § 56(a). "An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Fincher v. Depository Trust & Clearing Corp., 604 F.3d 712,

720 (2d Cir. 2010) (citations and quotation omitted). "A fact is material if it might affect the outcome of the suit under the governing law." Id. In deciding a motion for summary judgment, the court must "construe the facts in the light most favorable to the nonmoving party" and "resolve all ambiguities and draw all reasonable inferences against the movant." Brod v. Omya, Inc., 653 F.3d 156, 164 (2d Cir. 2011) (quotation omitted).

For the reasons stated herein, Defendant's motion for summary judgment is granted.

## I. **Failure to Page Wages under New York Labor Law**

Plaintiff's first cause of action seeks to recover unpaid wages under the New York Labor Law § 191. Plaintiff claims she is entitled to commission from the USDA contract which she helped to procure and which was ultimately awarded to Preeminent. She seeks $82,000, which is .5% of the alleged $16.4 million USDA contract award. ECF 39, Memo of Law, at 17.

Under N.Y.L.L § 191(1)(c), any "commission salesperson shall be paid the wages . . . commissions and all other monies earned or payable in accordance with the agreed terms of employment . . ." A commission salesman is "any employee whose principal activity is the selling of any goods, wares, merchandise, services, real estate, securities, insurance or any article or thing and whose earnings are based in whole or in part on commissions." Id. at § 190(6).[5] Section 191 "only involves the timeliness of wage payments, and does not appear to afford to plaintiffs any substantive entitlement to a *particular* wage." Myers v. Hertz Corp., 624 F.3d 537, 545 (2d Cir. 2010) (emphasis in original). Thus, the threshold issue is whether there was an enforceable contract entitling Williams to the unpaid commission she seeks. A claim under

---

[5] The parties expend significant energy arguing whether Williams was an employee or an independent contractor, and the extent of her business development responsibilities. The Court need not wade through those fact-specific and hotly disputed issues, because summary judgment is required on other grounds as a matter of law, as discussed herein. For the purposes of this motion, it is assumed that Williams was an employee of Preeminent, and was engaged in some business development activities, as she contends.

7

section 191(c) "rises and falls with plaintiff's claim for breach of contract," Apple Mortg. Corp. v. Barenblatt, 162 F. Supp. 3d 270, 289 (S.D.N.Y. 2016), and her "[f]ailure to establish a contractual right to wages necessarily precludes a statutory claim under New York's labor law." Id., citing Simas v. Merrill Corp., No. 02–CV–4400, 2004 WL 213013, at *2 (S.D.N.Y. Feb. 4, 2004); see also Karmilowicz v. Hartford Fin. Servs. Grp., Inc., 494 F. App'x 153, 158 (2d Cir. 2012).

Although a contract can be formed without a written agreement, Delaney v. Bank of Am. Corp., 766 F.3d 163, 171 (2d Cir. 2014), the New York Statute of Frauds voids a verbal agreement that "[b]y its terms is not to be performed within one year from the making thereof or the performance of which is not to be completed before the end of a lifetime." General Obligations Law § 5–701(a)(1). To determine whether the Statute of Frauds bars an agreement, the "fundamental question is whether the parties could have performed under the agreement within one year," Levine v. Zadro Prod., Inc., No. 02-CV-2838, 2003 WL 21344550, at *3 (S.D.N.Y. June 9, 2003), and "[t]he endurance of defendant's liability is the deciding factor." Nat Nal Serv. Stations, Inc. v. Wolf, 304 N.Y. 332, 337 (1952).

Here, the agreement falls squarely within the Statute of Frauds. It is well settled that when "the accrual of commission is dependent upon the will of a third party and not upon the parties to the contract, the oral commission agreement is, by its terms, incapable of completion within one year." Intertex Trading Corp. v. Ixtaccihuatl S.A. de CV, 754 F. Supp. 2d 610, 613 (S.D.N.Y. 2010); see also Zupan v. Blumberg, 2 N.Y.2d 547, 550 (1957). Plaintiff's involvement bidding on a government contract entitled her to commission if and when the contract was awarded to Preeminent and fully executed. Thus, Defendants' obligation to pay commission depended upon whether and when a third party government agency awarded and

executed the contract. That occurrence was outside Defendants' control and may not occur for an indefinite time in the future. See e.g. Bonsey v. Kates, No. 13-CV-2708, 2013 WL 4494678, at *7 (S.D.N.Y. Aug. 21, 2013) (a commission agreement violated the Statute of Frauds because, "though the sale of cello could have been completed within one year, performance [wa]s dependent, not upon the will of the parties to the contract, but on that of a third party buyer").

Plaintiff claims that "there is no evidence on the record" to suggest that "commissions would continue on contracts procured *after* the termination of her employment." ECF 39, Opp., at p. 17 (emphasis in original). Her position in this case and her own evidence belie that claim. If Plaintiff was not entitled to post-termination commission, then she would not be entitled to commission on the USDA contract, which was awarded after she was terminated and is the sole contract for which she seeks commission in this case. Williams Dep. at 200:15-201:5. Additionally, her emails request commission payments for contracts that had yet to be awarded, even after her termination. ECF 38-13, p. 1; 39-1, Ex. F. It is clear that Plaintiff believed she was entitled to commission on contracts awarded after she was terminated, and "a commission sales arrangement that extends beyond the employee's termination . . . cannot be performed within one year," and thus violates the Statute of Frauds." Marciano v. Crowley, No. 08-CV-305, 2009 WL 3165871, at *4 (W.D.N.Y. Sept. 28, 2009) (collecting cases); see also Levine, 2003 WL 2134450 at *5.

Indeed, the salutary purpose served by the Statute of Frauds is persuasively evidenced by this case. A cursory review of the facts manifests the absence of a mutual agreement of the terms of a contract which a writing would have provided. For example, Plaintiff claims that her first commission payment was to be paid in a lump sum (Williams Dep. at 226:2-9), but also indicates that she was to receive a car "for the first major contract and then a certain percentage

9

on the contracts to follow." ECF 38-13, p. 1. Plaintiff is also unable to articulate the percentage commission she was entitled to, stating only that it was between .3 to .5 percent. Williams Dep. at 226:2-9. And the Jan. 16 and Jan. 30 Emails claim that Bell still needs to "hammer[] out" how much commission will be paid, further indicating that there was no meeting of minds between the parties. ECF 38-13, p. 1.

The Statute of Frauds protects parties from being bound by the terms of an agreement to which they did not actually agree and shields defendants from persistent liability of more than one year in the absence of a writing. It prohibits enforcement of the verbal commission agreement in this case. Because Plaintiff's unpaid wage claim is premised solely on an unenforceable verbal agreement, that claim cannot survive and must be dismissed.

## II. Retaliation under New York Labor Law § 215

Plaintiff's next claim alleges that Defendants unlawfully retaliated against her in violation of N.Y.L.L. § 215 when they terminated her just four days after she sent the Jan. 16 Email regarding her entitlement to commission payments. ECF 39, Opp., at pp. 19-22. To establish a *prima facie* claim for retaliation under section 215, a plaintiff must show that "she made a complaint about the employer's violation of the law and, as a result, was terminated . . . ," and that there is a "nexus between the employee's complaint and the employer's retaliatory action." Higueros v. N.Y. State Catholic Health Plan, Inc., 630 F. Supp. 2d 265, 269 (E.D.N.Y. 2007). The employee's complaint need not cite a specific provision of the N.Y.L.L. alleged to be violated, but the employee must reasonably believe that the employer is violating the Labor Law, and "must have stated a complaint . . . about conduct that violates the Labor Law." Flick v. Am. Fin. Res., Inc., 907 F. Supp. 2d 274, 279 (E.D.N.Y. 2012).

The Jan. 16 Email is an inquiry about the amount of commission Bell plans to pay Williams, not a complaint about a Labor Law violation. An employee's inquiry as to the amount

10

of commission to be paid is not a complaint sufficient to support a retaliation claim, particularly when it is clear that Plaintiff did not believe that Defendants were violating the Labor Law at that time. Id. at 282. Therefore, Plaintiff has failed to establish a *prima facie* case of retaliation under section 215, and that claim must be dismissed.

### III. Unjust Enrichment

Plaintiff's final claim alleges that Defendants were unjustly enriched in the amount of $16.4 million, because they received the benefits of the USDA contract without paying Plaintiff commission. ECF 39, Opp., pp. 22-23. It is undisputed that Defendants paid Plaintiff her salary through the date of her termination. Thus, Plaintiff's theory of unjust enrichment depends upon proof of an agreement entitling her to commission in addition to her base salary. See e.g. Levine, 2003 WL 21344550 at *5. It is well established that "a plaintiff may not assert an unjust enrichment claim to circumvent the statute of frauds." Intertex, 754 F. Supp.2d at 616. Thus, Williams may not "simply rely on the doctrine of unjust enrichment . . . to recast a contract action that would otherwise be barred by the Statute of Frauds. . ." Bonsey, 2013 WL 4494678 at *7; see also Morgenweck, 410 F. App'x at 402, n.1 (collecting cases). The unjust enrichment claim depends upon the existence of the commission agreement which is barred by the Statute of Frauds, and that claim must be dismissed.

### CONCLUSION

For the reasons stated herein, Defendants' motion for summary judgment is granted in its entirety.

SO ORDERED.

Dated:     Brooklyn, New York
           April 27, 2017

                                              /s/
                                        I. Leo Glasser